UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GINO NUNN,

       Plaintiff,                            Case No. 1:12-cv-687

      v.                                   Dlott, J.
                                         Bowman, M.J.

GRAPHIC PACKAGING INTERNATIONAL, INC.,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Gino Nunn brings this action, pro se, against defendant Graphic Packaging International, Inc. ("GPI") alleging that defendant discriminated against him on the basis of his alleged disability in violation of the Americans with Disabilities Act ("ADA"). This matter is now before the Court on Defendant's motion for summary judgment (Doc. 32) and the parties' responsive memoranda and supporting documents. (Docs. 34, 35). For the reasons set forth herein, the undersigned finds that Defendant's motion for summary judgment is well-taken and should be granted.

**I. Background and Facts**

GPI manufactures heat transfer labels for consumer products at its Norwood, Ohio plant. Plaintiff began working for one of GPI's predecessors sometime between 2004 and 2005, and last worked for GPI as a porter. (Doc. 31, Deposition of Gino Nunn, p. 121, ¶¶ 1-14; p. 122, ¶¶ 10-12 ("Nunn Dep."). In this position, Plaintiff worked twelve-hour shifts and was responsible for providing general cleaning and routine maintenance both within the Norwood plant and of the surrounding grounds. *Id.* at p. 123, ¶¶ 8-13. Some of Plaintiff's duties as a porter included: sweeping and mopping

floors; emptying trash; servicing the restrooms; cleaning furniture and equipment; removing debris and scrap from the plant exterior; and moving furniture and equipment as needed.  (Doc. 31, Ex. B). This position requires standing for extended periods of time, performing awkward and repetitive movements, and lifting up to fifty pounds.  *Id.* According to Plaintiff, this position required extensive walking and sometimes required lifting items as heavy as eighty pounds.  (*Id.* at p. 123, ¶¶ 20-25; p. 124, ¶¶ 1-14). Plaintiff acknowledged that the porter position at GPI involved "being able to be physical." *Id.* at p. 124, ¶¶ 4-7.  Plaintiff further testified that he worked, on average, 44 to 56 hours per week as a porter. (*Id.* at p. 123, ¶¶ 8-19).

On or about February 25, 2010, Plaintiff's wife, Rikki Nunn ("Mrs. Nunn"), contacted GPI and advised the Company that Plaintiff had been briefly hospitalized for kidney problems on February 21, 2010, would be having outpatient surgery on March 1, 2010, and needed to be off work for a short period of time. (Doc. 31, Nunn Dep. Ex. 4, p. 15). Thereafter, Plaintiff applied for leave under the FMLA. (Nunn Dep., p. 96, ¶¶ 12-25; p. 97, ¶¶ 1-17).  Plaintiff also applied for leave and benefits under GPI's short term disability ("STD") plan (*Id.* at p. 90, ¶¶ 1-5), which allowed eligible employees to take up to six months of leave due to qualifying reasons.

On March 9, 2010, Plaintiff provided GPI with a doctor's note releasing him to return to work on light duty restrictions from March 9, 2010 until Plaintiff could be further evaluated on March 18, 2010.  (Doc. 31, Nunn Dep., p. 43, ¶¶ 1-8; Nunn Dep. Ex. 3, pp. 12-14). GPI informed Mrs. Nunn that, for liability reasons, the company could not return Plaintiff to work until after he was further evaluated and could establish that he was fit for duty.  (*Id.*).

Plaintiff began receiving kidney dialysis treatments on or about March 16, 2010. (Doc. 31, Nunn Dep., p. 153, ¶¶ 11-21). At least one of Plaintiff's physicians stated that he has been "continuously unable to perform required job duties" since he began dialysis. (Nunn Dep., p. 153, ¶¶ 11-21). Plaintiff has regularly received dialysis treatments three times a week, on Monday, Wednesday, and Friday which last approximately three and a half to four hours per treatment. *Id.* at p. 15-17, 18, ¶¶ 17-19. Plaintiff will be on dialysis for the rest of his life unless he receives a kidney transplant *Id.* at p. 84, ¶¶ 14-18.

On or about May 27, 2010, Plaintiff received an FMLA exhaustion letter from GPI's third party administrator encouraging him to "contact [GPI] to determine the availability of [his] job status or any other leave options." (Doc. 31, Nunn Depo., p. 96, ¶¶12-25; p. 97, ¶¶ 1-17). Plaintiff acknowledged that he did not personally contact GPI to discuss his job status or other leave options after receiving this letter. (*Id.* at p. 98, ¶¶ 5-21). Thereafter, on or about August 22, 2010, Plaintiff exhausted all of the leave and benefits available to him under GPI's STD policy. (*Id.* at p. 90, ¶¶ 1-5).

In September or October of 2010, Philip Tacy, then one of GPI's Human Resources Managers, attempted to contact Plaintiff on at least two occasions to discuss Mr. Nunn's status because he was essentially absent without any available leave. (Doc. 32, Tacy Aff., ¶ 4). Although Mr. Tacy left a message each time he called, Plaintiff never returned any of Mr. Tacy's messages. *Id.*

In March 2011, approximately seven months after Mr. Nunn had exhausted all of his available leave and had been on leave for more than thirteen months, GPI again attempted to reach Mr. Nunn to discuss his leave status. (Doc. 21, Ex. E, Affidavit of

Grace Sotto, ¶¶ 4-5 ("Sotto Aff.")). Grace Sotto, one of GPI's Human Resources Generalists, contacted Mr. Nunn on four separate occasions – twice in March 2011 and twice in April 2011. (*Id.* at ¶¶ 1-5). On each occasion, Ms. Sotto left a message and requested that Plaintiff call her back as soon as possible to discuss his leave status. (*Id.* at ¶¶ 4-5) . Mr. Nunn, however, never returned Ms. Sotto's calls or otherwise responded to these messages. *Id*. Notably, Ms. Sotto's last message advised Mr. Nunn that GPI would consider him to have voluntarily abandoned his position if he did not contact GPI to discuss his leave status. (*Id.* at ¶ 6). . Mr. Tacy was present with Ms. Sotto when she left that final message. (*Id.*; Tacy Aff. ¶ 5).

Plaintiff agrees that Ms. Sotto called and left him a message on at least one occasion, and possibly two occasions, in March 2011. (Doc. 31, Nunn Dep., pp. 178-179). Plaintiff further acknowledged that he never returned Ms. Sotto's call[s]. *Id.* When asked why he did not return Ms. Sotto's message[s], Plaintiff replied, in pertinent part: "I don't even think I wanted to talk – I don't know why I didn't. I'm just going to put it to you that way. I don't know why I didn't." (*Id.* at p. 179, ¶¶ 6-16).

Thereafter, GPI terminated Plaintiff for job abandonment on or about May 17, 2011. GPI sent Plaintiff a termination letter on the same date advising him that the Company deemed him to have abandoned his job due to his failure to respond to the Company's inquiries regarding his leave status. (Doc. 31, Nunn Dep. Ex. 2, pp. 5-11).

After receiving the May 17, 2011 termination letter, Plaintiff and Mrs. Nunn contacted GPI claiming that Plaintiff had previously attempted to contact GPI regarding his return, the Nunns inquired about Plaintiff returning to work. The Nunns, however, never submitted a doctor's note reflecting that Plantiff was fit for duty and had been

released to return to work in any capacity. (Doc. 31, Nunn Dep., pp. 136, ¶¶ 17-25; p. 137, ¶¶ 1-16; p. 182, ¶¶ 23-25; p. 183, ¶¶ 1-12).

Thereafter, on January 25, 2012, Plaintiff filed a charge of discrimination with the EEOC based on disability against GPI. On June 13, 2012, the EEOC issued a determination that it is unable to conclude that the information obtained during its investigation establishes violations of the statutes. The EEOC issued also a 90-day notice of right to sue letter to Plaintiff.

Plaintiff then filed the instant action on September 11, 2012, alleging that GPI discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA"). GPI now moves for summary judgment.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations.  After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)).  In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587 (citation omitted).  It is the Plaintiff's burden to point out record evidence to support his claims.  "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin*

6

*County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Defendant's Motion for Summary Judgment

As detailed above, Plaintiff's complaint alleges that Defendant discriminated against him based on his disability in violation of Federal law. GPI argues that Plaintiff cannot establish a *prima facie* case of disability discrimination, because he cannot show that he was otherwise qualified for his position. Assuming arguendo, that Plaintiff can establish a *prima facie* case of discrimination, GPI asserts that it had a legitimate non-discriminatory reason for terminating Plaintiff's employment and Plaintiff cannot show that GPI's proffered reason for his termination is a pretext for discrimination. Plaintiff, however, claims that he is able to establish that he was terminated because of his disability.

### C. GPI is entitled to Judgment as a Matter of law

1. *Burden Shifting*

Plaintiff seeks to establish his discrimination claims based on circumstantial evidence. Disability discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1105 (6th Cir.2008) (applying the burden-shifting framework to an ADA claim).

Under the burden-shifting framework of *McDonnell Douglas,* the plaintiff must first establish a *prima facie* case under the relevant statute. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. "A plaintiff's burden in establishing a prima facie case is not

intended to be an onerous one." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1114 (6th Cir. 2001). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision.  If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Pursuant to this framework, the Court will first determine whether Plaintiff has stated a prima facie case of disability discrimination for his termination and/or his claim for failure to accommodate.  If he does, the Court will then determine whether Defendant has proffered a legitimate, non-discriminatory reason for its conduct.  If Defendant satisfies these criteria, the Court will inquire as to whether a reasonable finder of fact could find that Plaintiff has shown that the proffered reasons were a pretext for disability discrimination or retaliation.  If Plaintiff has produced evidence from which a jury could conclude that Defendants' proffered reasons for their actions were a pretext for discrimination or retaliation, Defendants' motion for summary judgment must fail.

*2. Disability Discrimination*

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To make out a *prima facie* case of employment discrimination through indirect evidence under Title I, a plaintiff must show that "1) he or

8

she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).

GPI argues that Plaintiff cannot satisfy the second element of a *prima facie* case of disability discrimination, *i.e.* that he was otherwise qualified for the position, with or without reasonable accommodation. In order to be a "qualified individual," Plaintiff must establish that he is able to perform the essential functions of the position, with or without reasonable accommodation. *See* 42 U.S.C. § 1211(8). Plaintiff has failed to do so.

Here, Plaintiff contends that he "has always requested to return to work, but was refused the right to reinstated by Defendant." (Doc. 34 at 3). With respect to his ability to the essential functions of his job at the time of separation, Plaintiff further asserts:

> No one but Gino Nunn himself and his Doctor would be in the position to make such a determination. Yet the Doctor(s) provided more than one release for Gino Nunn to return to work and the Defendant refused his reinstatement.

*Id.*

Such assertions, however, are not supported by the evidence of record. Notably, with the exception of the initial doctor's note given to GPI on March 9, 2010 releasing Plaintiff to light duty until further evaluation on March 18, 2010, Plaintiff did not request to return to work until after he was terminated from GPI. (Doc. 31, Nunn Dep., p. 43, ¶¶ 1-8; Nunn Dep. Ex. 3, pp. 12-14).

9

Furthermore, both Plaintiff and his healthcare providers made several representations that he did not intend to return to work and that he was permanently disabled due to his kidney failure. In this regard, Dr. Stephen Dumbauld ("Dr. Dumbauld"), the physician who has treated Mr. Nunn for his kidney failure, repeatedly deemed Mr. Nunn to be permanently disabled for life in questionnaires to support Mr. Nunn's application for STD benefits. (Doc. 31, Nunn Dep., pp. 79-83; Nunn Dep. Ex. 6, pp. 18-24). Dr. Dumbauld also consistently indicated that Plaintiff had been "continuously unable to perform required job duties" since March 15, 2010, the approximate date on which he began dialysis. (Doc. 31, Nunn Dep., p. 153, ¶¶ 11-21).

Moreover, in March 2010, Dr. Dumbauld confirmed that Plaintiff was "unemployed" and had "reached the stage of renal impairment that appears irreversible and permanent and requires a regular course of dialysis or kidney transplant to maintain life" to help Mr. Nunn obtain Medicare benefits. Plaintiff admitted that he will be on dialysis and permanently disabled unless and until he receives a kidney transplant. (Doc. 31, Nunn Dep., pp. 83-84).[1] The record indicates that Plaintiff's dialysis provider also indicated in an Assessment and Plan of Care Report signed by Plaintiff that he "quit[] his job [at GPI] when he became too ill to work prior to the start of dialysis." (Doc. 31, Ex. 18). Dr. Dumbauld also indicated Plaintiff was "unemployed" in a March 2010 certification in support of Plaintiff's application for Medicare benefits. (Doc. 31, Ex. C).

Additionally, Plaintiff acknowledged that he never obtained a doctor's note releasing him to return to work after he began his dialysis treatments or after he

---

[1] In addition, as noted by GPI, even if Mr. Nunn were willing and able to work part time, GPI had no duty to create a part time position for Mr. Nunn, who acknowledged that his previous position was full time. (Doc. 31, Nunn Dep., p. 55, ¶¶ 8-16; p. 123, ¶¶ 8-19; Tacy Aff. ¶ 6]. *See White v. Std. Ins. Co.*, 529 Fed. Appx. 547, 550 (6th Cir. June 28, 2013) (employers do not have to create part time positions where none previously existed).

exhausted his leave. (Doc. 31, Nunn Dep., p. 136, ¶¶ 17-25; p. 137, ¶¶ 1-16; p. 182, ¶¶ 23-25; p. 183, ¶¶ 1-12). As such, Plaintiff cannot show that he was qualified to perform the essential functions of his job. *See Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (6th Cir. 1998) (employee who was not released to return to work was not qualified to perform the essential functions of the job); *see also Basden v. Professional Tranport., Inc.* 714 F.3d 1034 (7th Cir. 2013) (employee not a qualified individual where she failed to demonstrate she could regularly attend work).

Accordingly, the undersigned finds that Plaintiff has failed to establish that he was qualified to perform the essential elements of his position, a necessary element to establish a *prima facie* case of discrimination under either claim. In light of the foregoing, the undersigned finds that Plaintiff has failed to establish a *prima facie* case of disability discrimination.

*3. GPI's legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff's arguments regarding pretext*

Even if the Plaintiff could establish a *prima facie* case of discrimination, GPI has proven a legitimate, nondiscriminatory business purpose for its actions. The uncontested evidence shows that GPI terminated Plaintiff based upon his failure to respond to GPI's messages seeking information regarding his leave status. Plaintiff fails to provide any evidence to establish that the stated reasons for Plaintiff's termination had no basis in fact; did not actually motivate GPI's decision; or were insufficient to warrant the decision. See *Manzer,* 29 F.3d at 1084.

In light of the foregoing, Plaintiff has failed to rebut defendant's legitimate non-discriminatory reasons for his termination and has failed to produce any evidence that GPI intended to discriminate against plaintiff on the basis of his disability. *See*

11

*Thurman*, 90 F.3d at 1166 (citing *Hicks,* 509 U.S. at 502) ("The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination and that the employer intended to discriminate on the basis of race.)" Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and Day Spa, Inc.*, Case No. 1:09-cv-882, 2011 WL 379097, * 7 (S.D. Ohio 2011) (J. Weber). Plaintiff's unsupported conclusions are insufficient to meet his burden of establishing that GPI proffered reasons for his termination were a pretext for racial discrimination.

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 35) be **GRANTED** and this case be **TERMINATED** on the active docket of the Court.[2]

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

---

[2] GPI further asserts that Plaintiff should be judicially estopped from asserting his disability discrimination claims because he failed to disclose his suit against GPI as an asset in his bankruptcy, as required by the Bankruptcy Code. In light of the recommendation that GPI is entitled to judgment as a matter of law on Plaintiff's discrimination claim, such assertion need not be addressed.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GINO NUNN,

       Plaintiff,                                 Case No. 1:12-cv-687

v.                                            Dlott, J.
                                               Bowman, M.J.

GRAPHIC PACKAGING INTERNATIONAL, INC.,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).